IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| RAY ACUNA | § | |
| v. | § | CIVIL ACTION NO. 5:20cv185 |
| TDCJ VAN DRIVERS, ET AL. | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Ray Acuna, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. The Plaintiff's Complaint**

Plaintiff's amended complaint (docket no. 13) is the operative pleading in the case. This amended complaint names as Defendants two TDCJ van drivers, the Telford Unit administration (identified as "wardens, majors, and captains,") the Telford Unit grievance staff, and the Step Two grievance appeal staff. The amended complaint states on December 6, 2018, he was sent to the Brace and Limb Clinic at the Beto Unit. When it came time to return to the Telford Unit, two officers loaded him into the wheelchair van backwards without fastening any restraints or seat belts. After some miles, the van driver slammed on the brakes, causing Plaintiff to flip backwards out of his chair and hitting a metal bracket on the floor. He states "the Administration, grievance staff, and grievance administration in a concerted effort denied Ray redress to grievances, medical services,

and access to courts, through deliberate indifference, with malice to Ray's pain and suffering, theft, retaliation, and biased grievance investigators."

Ray states that the van drivers "supervised in loading me in backwards where I slipped and was injured." He contends that the Telford Unit administrators are in charge of training the officers on the van and are involved in a "conspiracy to retaliate." He says that the administrators "give general answers that purport review but do not provide actual redress, have officers slap cubicle walls while sleeping, turn on lights in housing area for extended periods for punitive purposes to dissuage submittal [sic] of I-127 grievances, and move inmates who complain or write to state senators." Plaintiff also maintains that the unit administrators report false information in the course of responding to grievances to minimize liability and provide no redress; he claims this is done in medical grievances as much or more than any other type of grievance.

Likewise, Plaintiff asserts that the Telford Unit grievance staff gives general answers which "purport review but do not provide actual redress." He says that the grievance investigators conduct investigations to the detriment of the inmates and use the grievance screening forms to "manipulate improper, excessive and repetitive delays." Plaintiff further says that the grievance officials discard supporting documents which inmates attach to their grievances, and then return the grievances because there are no supporting documents or evidence to support the claims. He contends that the grievance officials dishonestly screen grievances using the "rejection criteria" and report false information in order to minimize liability. Plaintiff states that the Step Two grievance appeal officials conspire to retaliate to violate inmates' rights.

In a "present sense affidavit" (docket no. 14, p. 11) concerning the van drivers, Plaintiff states that on December 6, 2018, two new van drivers loaded him into the wheelchair van backwards and did not strap him in. One officer operated the lift while the other pushed Plaintiff into the van.

Plaintiff states he was pushed in facing the rear of the van and the chair brakes were locked. He was in handcuffs and a metal box (i.e. around the handcuffs) so he could not use his hands. He states he did not know he couldn't be loaded in backwards until about five minutes after leaving the

gate, when the driver slammed on the brakes. This caused him to flip backwards, where he rolled twice and then slammed to a stop on a metal bracket on the floor.

When the officers saw he was not moving, Plaintiff states they turned around and went back to the Beto Unit, where he was taken to the clinic. Something was put around his head and neck to keep him still and EMS was called to take him to the county hospital for an MRI.

After the MRI, Plaintiff states that he was taken back to an room in the ER, where a young Hispanic woman came in, said he was faking, and left. From that moment on, Plaintiff states he has been "treated like a liar." He says that he has been hurting for some two years and five months, and the University of Texas Medical Branch - Correctional Managed Health Care has shown "prolonged, callous indifference to helping me ease my pain, nor have they done anything except cursory care that amounts to no care at all." (Docket no. 14, pp. 11-12). Plaintiff states any kind of rough or jarring movement causes his back to swell and feels like he is being stung by wasps. On December 7, 2018, Plaintiff states ranking officers came and took pictures of his injuries.

In a "present sense affidavit" concerning the grievance officers, Plaintiff states that the grievance staff at the Telford Unit has given him problems since he has been at the unit. He states he has experienced refusals to answer his Step One grievances, rubber-stamp "answers" that claim review or investigation but give no remedy, dishonesty in the screening process, refusals to give receipts for grievances, reporting of false information, the use of biased investigators, and punitive and harassing cell searches to dissuade submission of grievances. Plaintiff states he filed Step One and Step Two grievances in January of 2020, and then in October an officer named Dixon "tore my house up," which he believes is retaliation for his having written her up. She also went around telling people about the charges against Plaintiff, trying to get him harassed or hurt. Plaintiff states he is "ADA qualified," but does not set out any other facts concerning his purported disability or claims relating to such disability.

## II. Discussion

A. General Screening Standards

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees and identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts that, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. Montoya v. FedEx Ground Packaging System Inc., 614 F.3d 145, 149 (5th Cir. 2010), *citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Hershey v. Energy Transfer Partners, L.P., 610 F.3d 239, 245 (5th Cir. 2010); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). This plausibility standard is not akin to a probability requirement, but asks for more than a possibility that the defendant has acted unlawfully. Twombly, 550 U.S. at 556.

Detailed factual allegations are not required, but the claim must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 677-78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Id. at 678.

A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability, or if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. Rios v. City of Del Rio, Tex., 444 F.3d 417, 421 (5th

4

Cir. 2006). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. Chhim v. University of Texas at Austin, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010), *citing* Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. Rios, 444 F.3d at 421.

The Fifth Circuit has explained that while *pro se* complaints are construed liberally, the court is still bound by the allegations of the complaint and is not free to speculate that the plaintiff "might" be able to state a claim if given yet another opportunity to amend the complaint. Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). The court explained as follows:

> For example, if an IFP plaintiff, in amending his complaint through a response to a questionnaire, alleges in his response that he received inadequate medical care while incarcerated, we should not reverse the dismissal of the complaint on the basis that the plaintiff could possibly add facts that would demonstrate that he was treated with deliberate indifference in the medical care that he received. As another example, if an IFP prisoner asserts in the questionnaire response that he has been denied recreation time, we should not reverse dismissal on the ground that he might also be able to assert a claim that the denial was in retaliation for his having filed a grievance.

Id. at 97.

B. Deliberate Indifference

Prison officials have a constitutional obligation not to be deliberately indifferent to the health or safety of the inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S.Ct. 668, 88

5

L.Ed.2d 677 (1986).  In defining deliberate indifference, the Supreme Court has explained as follows:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The Fifth Circuit has explained that deliberate indifference is "an extremely high standard to meet" and cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.  Torres v. Livingston, 972 F.3d 660, 663 (5th Cir. 2020).

C. The Van Drivers

Plaintiff's amended complaint states two new officers loaded him into the wheelchair van backwards without affixing any restraints or seat belts.  Some time during the trip, the driver slammed on his brakes, causing Plaintiff to flip backwards out of his chair and hit a metal bracket on the floor.

In Nixon v. Neal, civil action no. 20-2934, 2021 U.S. Dist. LEXIS 123025, 2021 WL 2688950 (E.D.La., June 7, 2021), several Louisiana prison vans were involved in a multi-vehicle accident.  The plaintiff Herman Nixon alleged that he was being transported in a shuttle bus even though he had recently had surgery.  His feet were shackled and he had zip ties on his hands, but he was not seat-belted.  He contended that the accident occurred because the driver was paying attention to his phone and not the road.

The district court observed that the Fifth Circuit and district courts within the circuit have consistently held that the mere failure to provide seat belts for prisoners during transportation does not by itself amount to deliberate indifference.  The court looked to Anderson v. Stephens, 609 F.App'x 217, 2015 U.S. App. LEXIS 11868, 2015 WL 4091703 (5th Cir., July 7, 2015), in which

the prisoner complained he suffered injuries in a traffic accident while being transported in a prison bus without seat belts. The Fifth Circuit affirmed the district court's dismissal of the lawsuit as frivolous, noting that the prisoner did not allege that the bus driver had the knowledge of a substantial risk as is required to state an Eighth Amendment claim.

Likewise, in Crooks v. Crain, 327 F.App'x 493, 2009 U.S. App. LEXIS 10534, 2009 WL 1361492 (5th Cir. 2009), the prisoner claimed that being transported in vehicles lacking seat belts was so unsafe as to violate his constitutional rights. The Fifth Circuit upheld the dismissal of the lawsuit as frivolous.

By contrast, in Rogers v. Boatright, 709 F.3d 403, 408-09 (5th Cir. 2013), the plaintiff alleged that he was in leg irons and handcuffs but did not have a seat belt, and thus could not protect himself when the driver stopped abruptly. He contended that the driver operated the vehicle recklessly despite knowing that the plaintiff was shackled and did not have a seat belt. The plaintiff further stated that the driver told another officer that other prisoners had similarly been injured the prior week and that such incidents "happen all the time." The Fifth Circuit held this complaint was distinguishable because the additional facts alleged by the plaintiff, accepted as true, were sufficient to demonstrate knowledge of the risk to the plaintiff and a disregarding of this risk.

After reviewing the case law, the district court determined that the plaintiff had not alleged any facts sufficient to state any claim greater than negligence. Because the plaintiff did not allege the defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that they actually drew that inference, the district court concluded that the plaintiff's claim was legally frivolous and failed to state a claim upon which relief may be granted.

Similarly, Plaintiff's allegations concerning the van officers do not contend that the officers knew of and disregarded a substantial risk to his safety. Even if the officers showed a lack of due care or should have known of a risk to Plaintiff's safety, such allegations amount to no more than

claims of negligence, as in Anderson and Nixon. Consequently, Plaintiff's allegations against the van drivers fail to state a claim upon which relief may be granted.

D. The Grievance Staff

Plaintiff complains that the unit grievance staff gives general, rubber-stamp "answers" that claim review or investigation but provide no redress. He also says that the investigators are "biased" and report false information, and the process of screening grievances is "dishonest."

Prisoners do not have a federally protected liberty interest in having grievances resolved to their satisfaction. Hawes v. Stephens, 964 F.3d 412, 418 (5th Cir. 2020). Thus, the Fifth Circuit has explained that an alleged due process violation for failure to investigate grievances is "indisputably meritless." Hill v. Walker, 718 F.App'x 243, 2018 U.S. App. LEXIS 1278 (5th Cir., January 19, 2018), *citing* Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). Plaintiff's claims in this regard are in effect complaints about the outcome of his grievances, which does not set out a constitutional claim. *See* Streater v. Allen, 805 F.App'x 293, 2020 U.S. App. LEXIS 8834, 2020 WL 1320900 (5th Cir., March 19, 2020). His allegations in this regard fail to state a claim upon which relief may be granted.

E. The Unit Administrators

Plaintiff names the "Telford Unit administration," whom he identifies as "wardens, majors, and captains," saying these officials are in charge of training the van officers and are involved in a "conspiracy to retaliate." He also complained that they give general answers which do not provide actual redress, have officers slap cubicle walls while inmates are sleeping and turn on lights in housing area for extended periods for punitive purposes, and give false information in the course of responding to grievances.

Plaintiff does not provide any factual details concerning these claims, despite the fact that the order directing him to file an amended complaint specifically directed him to provide specific facts, including dates, and not merely conclusory allegations. The Fifth Circuit has stated that a

plaintiff in a 42 U.S.C. §1983 action must plead specific facts and not rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); *see* Iqbal, 556 U.S. at 678.

Plaintiff's claims against the "Telford Unit administrators" are entirely conclusory and lack any specific factual basis. As such, these allegations fail to state a claim upon which relief may be granted. *See also* Martinez v. City of North Richland Hills, 846 F.App'x 238, 2021 U.S. App. LEXIS 5670, 2021 WL 742662 (5th Cir., February 25, 2021) (noting that "each defendant is entitled to know what he or she did that is asserted to be wrongful.")

Plaintiff also contends that the unit administration failed to train the van officers. In order to maintain a claim for failure to train, the plaintiff must allege facts showing: (1) an actual failure to train; (2) that the failure to train caused a deprivation of the plaintiff's rights; and (3) the failure to train amounted to deliberate indifference. Jason v. Tanner, 938 F.3d 191, 196 (5th Cir. 2019), *citing* Thompson v. Upshur County, Texas, 245 F.3d 447, 459 (5th Cir. 2001). Plaintiff has wholly failed to make such a showing. His allegations against the Telford Unit administration fail to state a claim upon which relief may be granted.

F. Retaliation

Plaintiff makes vague references to retaliation throughout his complaint, asserting the unit administrators are involved in a "conspiracy to retaliate" and that unnamed officers conduct "punitive and harassing cell searches to dissuade submission of grievances." He refers to an officer named Dixon, who is not named as a defendant, who allegedly tore up his cell in October of 2020 in retaliation for grievances apparently filed some months earlier.

In order to state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Hines v. Marshall, slip op. no. 20-40444, 2021 U.S. App. LEXIS 29623, 2021 WL 4515392 (5th Cir., October 1, 2021), *citing* Jones v. Greninger, 188 F.3d 322, 324–25 (5th Cir. 1999). In the prison context, retaliation claims are "regarded with skepticism," and a prisoner raising such a claim "must allege the violation of a

specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal quotation marks and citation omitted). Conclusory allegations are insufficient; instead, the inmate's allegations must show either direct evidence of motivation or a chronology of events from which retaliation may plausibly be inferred. Id.

Plaintiff's allegations fall well short of setting out specific facts indicating direct evidence of retaliation or a chronology from which retaliation may plausibly be inferred. He does not provide any dates nor any facts demonstrating a linkage, even an inferred linkage, between the cell searches and the grievances. He refers to an officer named Dixon, who is not a defendant in the case, saying that he had Step One and Step Two grievances in January, and "it was there" in April of 2020, and then in October of 2020 Officer Dixon "tore my house up," which he believes was because he had written her up. Even had Plaintiff named Dixon as a defendant in the lawsuit, these allegations are wholly insufficient to sustain a retaliation claim.

G. The Americans with Disabilities Act

Although Plaintiff refers to the Americans with Disabilities Act, 42 U.S.C. §12132, he does not set out any facts giving rise to a claim under the Act. The Fifth Circuit has explained that in order to maintain an ADA claim, the plaintiff must show that he was adversely treated solely because of his disability. Davidson v. Texas Department of Criminal Justice - Institutional Division, 91 F.App'x 963, 2004 U.S. App. LEXIS 5180, 2004 WL 542206 (5th Cir.), *cert. denied*, 543 U.S. 864 (2004); Martinez v. City of North Richland Hills, 846 F.App'x at 245, *citing* Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011). Plaintiff has not alleged he was adversely treated solely because of his disability.

In addition, it is not clear who - if anyone - Plaintiff has sued for alleged violations of the ADA. Conclusory allegations of ADA violations are not sufficient to state a claim. Martinez, 846 F.App'x at *245. To the extent Plaintiff alleges violations of the ADA, such allegations fail to state a claim upon which relief may be granted.

10

H. Plaintiff's Medical Claims

Plaintiff refers to "prolonged and callous indifference" by the University of Texas Medical Branch - Correctional Managed Health Care with regard to his medical care. Plaintiff's claims of inadequate medical care are the subject of a separate lawsuit, styled <u>Acuna v. University of Texas Medical Branch - TDCJ Managed Care</u>, civil action no. 5:21cv14 (E.D.Tex.). As such, any claims concerning Plaintiff's medical care in the present case will be dismissed without prejudice so they may be addressed in that lawsuit.

## RECOMMENDATION

It is accordingly recommended that the above-styled civil action be dismissed without prejudice for failure to state a claim upon which relief may be granted. It is further recommended that the statute of limitations be suspended for a period of 60 days following the entry of final judgment.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See* <u>Battle v. United States Parole Commission</u>, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**SIGNED this 25th day of January, 2022.**

_____
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE